Good morning, Your Honors. Frank Prantill appearing before Mr. Austin. Can you keep your voice up? Yes, Your Honor. Thank you. This case involves a situation where a defendant ends up in prison, and within a matter of months he's questioning the deal he got. The district court, in denying the petition, placed the responsibility of the loss of the transcript, loss of the reporter's notes on the defendant, based on Park v. Raley. Now, Park v. Raley did not involve the Santabello problem, it involved the Boykin problem. And the Supreme Court reversed the Sixth Court of Appeals and placed the responsibility for the lost transcript on the defendant. And their reasoning was that there's a presumption of regularity here, and also there were two enhancements, and in one of them, the 1979 enhancement, the defendant was advised of his rights. And so the court reasoned that two years later he should have remembered his rights. And so they said it was not unreasonable to put the burden on the defendant. Well, that doesn't help us in this case. You may have looked at it a different way to the way the court looked at it, and that may be a problem. What is he alleging that the transcript would have showed? Well, let me just say this, Your Honor, that there's nothing. That's the problem. And why should it be on the defendant? No, but you may want to understand the question before you answer it. If he was alleging that the transcript showed A, B, C, D, and the government said, no, it didn't, then your argument might have more weight. But he's not alleging that there are certain things. He's just saying if we had the transcript, we might show whether I did or whether I didn't or what I did or what I didn't. He's not alleging something affirmatively. If he were alleging something affirmatively, then a court reviewing might say, all right, government, where's the transcript? He says this is so. You say it's not. Where's the transcript? But he didn't. He's not alleging anything. He's just saying the transcript's gone. I want the advantage of no transcript. No, no. As soon as he got to prison, he's questioning it. And what you've got here, if you look at the abstract of judgment, you can see that it's really messed up, Your Honor. I mean, the abstract has attached to it. Well, now we have a little bit more, too. There's a motion to expand. Apparently, there's a little more than they found the first time they looked. But let's look at the abstract of judgment. And you look at the statement of facts and the respondent's brief. And what you've got here, you've got him sentenced for three rapes, and there was only two. You've got him sentenced for sodomy, and there's no sodomy. And the dates of all these convictions are all messed up. So if you look at the abstract of judgment, it is a messed up thing. And now, no transcript. You've got a messed up abstract of judgment. You've got an inmate saying, Hey, I made a deal for 25 years, not 45. And there's no record. Now, sante bello means nothing, where there's no record. Now, the other thing you have on top of that is, I lost my train of thought here for a second. Why didn't the court order the reporter to transcribe what happened at the change of plea hearing? I mean, this inquiry started within a matter of months after my client got to prison. So he's saying, Hey, I got a deal here for 25 years. Now, if you look at what happened here, there were two rapes, and that's what he got for 25 years. And then he gets in jail, and he gets in trouble. And one of them, he's extracted from a cell, and most likely, he was the non-aggressor. The other one involves, I'm not that clear on the facts on the second one, but he was there with people that were really the movers in this attempted escape or in this escape. So I don't understand what the sentence here is. There is no regularity here. The record is a mess. And I'm trying to find out what the deal is here. What was the deal? My client said 25 years. Well, I'm hearing him say there was a 20-year sentence and a 25-year sentence, and he's saying that they were supposed to be concurrent, not that there were not. No, 25 was the first sentence. All right, 25, and that the 20 was supposed to be concurrent. But there are no documents that indicate that. Now, on the motion to expand it, it says that the court's minutes say that it was consecutive. Okay, the court's minutes, fine. You've got an abstracted judgment that contradicts all of that. I mean, you've got a sloppy record here. And when you're dealing with a man's life and sentence, I think the record's got to be very clear what the deal was, and there's nothing there. And why should the burden be on the defendant to produce the record when it's the state that lost the record, and when it's the state that didn't order the report to make the record? Well, I guess the record, now that they have produced, says that it was consecutive. That record is hearsay, Your Honor. That's a clerk making its notes, just like the abstracted judgment's making its notes of what happened. And there's no sodomy here. And there's three rapes. He's sentenced for three rapes, if you look at that abstracted judgment. And there's only two rapes. He's given 24 years. You should have been given eight years for each one of those. Now, I don't know what happened. I wasn't trial counsel. I don't know why they backed off. But maybe this thing, this jailhouse thing, wasn't all that serious, and the court just said, well, 25 years is enough. And then we've got a record that's not really clear what the deal was. So why should the burden be on the defendant? He's entitled to a record. The state had a responsibility to keep that record, and they didn't. The state had a record to keep the transcript of the change of plea for 75 years. The state had an obligation to keep the notes for 10 years, and they couldn't be destroyed unless the court ordered it. That's the law, and they didn't follow it. And then if you look at the record, it's messed up. Counsel, you know, I think you would be a different case if you were on direct appeal. And, of course, a lot of these issues could have been raised on direct appeal. And if you would have sought the record at that time, perhaps it could have been constructed or reconstructed or produced. But I don't think the same rules apply on collateral review. I mean, right, because these questions were not raised when the opportunity was there to raise it on direct appeal. Well, Your Honor, you cannot appeal a conviction. You cannot appeal a guilty plea. Now, when it came to my client's intention, Your Honor, if you say he was mistakenly sentenced for a sodomy he didn't commit, he certainly could appeal that. Well, he didn't. I know, but there was no record of a sodomy. They just threw that in. The point I'm trying to make is, Your Honor, when you plead guilty, there is no direct appeal. My client gets to prison, and he thinks he's due in 25 years. The CDC questions it, and the record has never really cleared up. He's asking the court, he's asking the CDC, hey, this is the deal. So there is no direct appeal. There is no issue to raise. And as soon as he found out about it, he's on it. Would you like to save a little time for rebuttal? Yes, Your Honor. Okay, thank you. May it please the Court, Pam Critchfield. I represent the State Respondent, Warden Carson. No, you think that magnifies it, records. So you have to speak. Louder. Louder. Okay. Yes. How is this? Better. I would first like to address the issue of the transcripts. There are no transcripts because there was no direct appeal of this case. So there were reporter's notes. And in the state system, what happens is the reporter's notes sit until there's an order that they be transcribed. And that never happened in this case. The allegations that they were lost are completely unfounded. The reporter's notes were not transcribed. And in 1996, a petitioner began his challenge to the consecutive or concurrent nature of the sentence. At that point, pursuant to the government code, it appears that the notes had been destroyed because of the passage of time. Is there anything in the record that would indicate that the government did anything to willfully destroy them? Absolutely not, Your Honor. Nothing. And I have found nothing. The petitioner has produced nothing to show that. The other allegation or inference is that the CDC, the California Department of Corrections, letters that they sent to the state court beginning, I believe, in 1987, asking for clerical and typographical corrections of the abstract somehow should have triggered the transcript, the reporter's notes being transcribed. But, in fact, that is not the way the system works. If there's a direct appeal, the reporter is ordered and is paid to transcribe the notes. But the letters that were sent to the court, to the superior court, were simply questioning the boxes that were checked on the abstract. So there was and there needed to be somehow if these transcripts were going to be, the notes would have been transcribed. There needed to be a procedure followed, and there never was. Well, why didn't anyone in your office request a copy of the state court file during the district court proceedings? We suddenly, now we've got this. There was another deputy who handled the proceeding in the district court. And I have, this case came up and then was reversed on a timeliness issue. And so I have a large file. And there was an appeal in the initial case, the 25-year sentence. There was an appeal in that, and I have a sentencing transcript in that. The file that I had in the office as I looked at it did not include the evidence or any other. I couldn't find any minute orders. There were no transcripts because there were no transcripts. The reporter's notes weren't transcribed. So at that point, when I got a call from the clerk here at the Ninth Circuit requesting the record, and I realized that the only record that I could find was the exhibits attached to the points and authorities, which were submitted to the district court, I thought, well, let me see what else I can find. In the record, the 25 years was for a rape, right? The 25 years rape for the initial sentence, I believe it was two rapes and a, let me tell you right here, it was 1983, it was for a rape, a sodomy, a robbery, and the admitted use of a deadly weapon during each crime. Okay, so there's one victim there. Now, in the 20-year sentence, how many rape victims are there? There are two rape victims, I believe, and then there are five counts that are jail-related. And the counts, the 12 counts. So the suspicion that there are three total rapes, it's just, all right, because counsel was saying there were two. No, no, not, no. And if you look at this abstract, it's a combo, a combination of the two crimes. They sentenced him originally in 1983, and then they brought him back and sentenced him, and he pled and was sentenced again in 1985, August and October of 1985. And they combined the two, the 1983 plea and sentence, with the 1985. Now, my recollection of sentencing at that time on rapes, they had to be, if they were separate victims, they had to be full consecutive separate sentences. And is that something that you're arguing there, that, I mean, how could it have been 20 years concurrent if the sentencing scheme at that time required full consecutive? Yes, we would argue it's absolutely objectively unreasonable that he would not have received a sentence for the 12 additional crimes that he was, he pled and was sentenced to in 1985. The victims were different, and they were rapes, rapes and robberies, and then the escape, the felony escape from jail charges. Yes, I, it's not reasonable as a district court found, I believe, that he would have received essentially no sentence for those additional crimes. Let me ask your understanding as well. This, I guess, agreement or the petitioner's understanding about these two sentences being concurrent. What is your understanding as to where that comes from? First of all, there's nothing in writing, right? Right. So is this a direct conversation between him and the DA, or was it between his? I don't know what his understanding is, Your Honor. Is there a specific allegation on that, or would the district court address that at all as to what might be? No, the district court just found that he has, there's no evidence at all that he produced to show that it would be a concurrent sentence, and it's objectively unreasonable based on the evidence that is present to conclude that it would be a concurrent sentence. There's no evidence at all as to, you know, that he talked to the DA or his lawyer told him I talked to the DA, and the DA says this or anything like that? No. No allegation and no evidence. If there are no further questions, I would submit it. All right. Thank you. Mr. Pranta, what's your understanding of where this agreement is supposed to have come from, that these two sentences would be concurrent? Well, it's my client. No, I mean, but where did he get it? Well, that's what his belief was, Your Honor, when he went to police. I know he had the belief, but what gave rise to that belief? Did he have a conversation with the DA or, you know, his own counsel or what? Do you know? I have no idea, Your Honor. You have no idea. All you know is that. I have no idea, except it was his idea. When he got to prison, he was there, you know, and when you get to prison, they move you around. All you know is that your client says I have this belief. My client said that's what I was sentenced to. Yes, that's correct. Now, the problem is this all could have been avoided had the superior court followed the law. In Government Code section, it's real clear 69955 requires an order from the court to destroy the reporter's notes. And there was no order. And it's really sad that when. . . How many years had passed? What, Your Honor? How many years had passed? Less than two when the question was arisen. When the question came up, it was less than two years. And the reason for that is because when you get to. . . When did I get 10 years? Did I not read it correctly? No, Your Honor. I mean, my client started sending letters in 1987. He was sentenced in 1987. Yeah, but what were the letters saying? That's what I'm talking about. When did the first. . . He's saying I got the wrong sentence. He's saying I should get 25 years in 1985. You mean in 1987, Your Honor. And then the clerk. . . There's no order destroying the. . . Authorizing the destruction of the reporter's notes. And the court's on notice that there's a question on the sentence here. There's a question on what the deal is. Now, sante bello means nothing if a court can throw away the records. If a court can throw away the transcripts. . . I expect you to represent your client. And you ought to do it. And he ought to be happy that you were here to do it. But what you're saying and what he's saying is these were additional crimes committed. Right. Everybody knew it. I'm pleading guilty. Right. And the court says, okay, we're throwing them away. We're going to act like it didn't happen because you've already been sentenced to 25. That's enough. You don't have to serve these others. Isn't that what you're telling us? Well, Your Honor, that's what my client believes. And if you look at what happened, there's two events that happened after these two incidents involving the rape. One is the cell extraction, and you know what those are all about. And as far as an attempted escape and an escape, if you don't go along with the crowd, you're in trouble. So, I mean, I don't know what the reason is. But the problem is, Your Honor, it's not our burden to what the deal is here. The deal, the burden should be on the prosecution because the state is the one that's responsible keeping the record. And they didn't. And they violated their own law by not keeping the reporter's notes. If they had followed the law, we wouldn't be here. We'd know what the deal was. But they didn't. All right. Thank you. Your time has expired. This matter will now stand submitted.
judges: Farris, Tashima, Callahan